UNITED STATES ex rel. SCHMIDT et al.
v. BATES, United States Marshal.

No. 7717.

Circuit Court of Appeals, Sixth Circuit.

March 17, 1938.

H. S. Buchanan and William G. Cavett, both of Memphis, Tenn., for appellants.

C. P. J. Mooney, of Memphis, Tenn. (William McClanahan and John M. Sullivan, both of Memphis, Tenn., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This case arises on appeal from the dismissal by the District Court of two petitions for writs of habeas corpus. The appellants Tucker and Schmidt were indicted, together with eight others, in the Eastern District of Arkansas, and apprehended in the Western District of Tennessee. Removal proceedings were instituted under title 18, section 591, U.S.C., 18 U.S.C.A. § 591 in the Western District of Tennessee. The United States Commissioner found that the offense had been committed, that there was probable cause to believe the appellants had committed it, and therefore issued an order of commitment. The District Court ordered the removal, and appellants then filed petitions for writs of habeas corpus. The two cases were consolidated for trial. By agreement of counsel the court heard the cases upon the pleadings and the transcript of the evidence before the Commissioner.

The indictment contains six counts. The first sets up a conspiracy to defraud the United States and the Federal Housing Administration (hereinafter referred to as the FHA), an agency of the United States. It alleges in substance that during the period in controversy the Federal Housing Administrator was authorized under title 12, sec-

tion 1703, U.S.C., 12 U.S.C.A. § 1703, section 2 of the National Housing Act, as amended, to issue to banks and other financial institutions contracts of insurance against losses sustained as a result of loans made for the purpose of financing alterations, repairs, improvements, equipment and machinery on real property, and that acting under that section, the Federal Housing Administrator issued to the First Bancredit Corporation of St. Paul a contract insuring the bank against losses sustained by it up to a total aggregate amount equal to twenty per cent. of the total amount advanced on such loans during the period of the contract.

The gist of the conspiracy alleged in this count is as follows: Appellants agreed with the other defendants that the Automobile Trading Company, a corporation in Helena, Arkansas, should be organized under the management of the defendant Jesse A. Jackson as an agency of the Automobile Sales Company of Memphis, Tennessee, for the purpose of selling electric refrigerators; that the salesmen of the Automobile Trading Company would agree to install refrigerators in homes on trial, with the understanding that if the buyer wished, the refrigerators would be removed at the end of the trial period, and that the buyers would not be expected to pay for them. At the time of making installations the salesmen would induce purchasers to sign in blank conditional sales contracts, installation statements, promissory notes and credit statements, upon the representation that the papers so signed were memoranda for the use of the Automobile Trading Company. The salesmen of the Automobile Trading Company would insert in the conditional sales contracts false representations that the refrigerators had been sold, and in the installation certificate statements that the refrigerators had been installed, and would insert false representations as to the buyer's income in the credit statements, and would give false amounts and dates on the promissory notes. The contracts, credit statements and notes were then transmitted with all papers to appellant Iver Schmidt, who was the proprietor of the Automobile Sales Company of Memphis. Schmidt would send the various papers to appellant James R. Tucker, manager of General American Credits, Inc, a credit investigating agency in Memphis, Tennessee, who would make a false "individual inquiry report" respecting the credit risk. All the papers, including the credit report, were returned to Schmidt to be forwarded for dis-

count to the First Bancredit Corporation, which was insured as to such obligations by the FHA. The first count charges that all of these acts were planned to be done with knowledge that the notes were not eligible for insurance, and that the false statements were planned to be made for the purpose of causing the Bancredit Corporation to report the contracts to the FHA for insurance, for the unlawful purpose of cheating, swindling and defrauding the United States Government and the FHA.

Six overt acts were alleged under the first count, each giving the history of a specific sale and alleging specific acts done by each of the appellants. The remaining five counts set forth in detail the making of five separate false credit statements for the purpose of obtaining credit under the provisions of the National Housing Act, as amended, 12 U.S.C.A. § 1701 et seq.

The four major propositions presented are (1) that the National Housing Act is unconstitutional and void; (2) that title 12, section 1703, U.S.C., 12 U.S.C.A. § 1703, a section of the act, if constitutional, relates to the financing of improvements upon real property and the purchase and installation of equipment and machinery on real property, and does not include electric refrigerators; (3) that the indictment is drawn under title 18, section 80, U.S.C., 18 U.S.C.A. § 80, which covers false and fraudulent representations to the United States Government, whereas the National Housing Act provides its own penalty with regard to such offenses, title 12 U.S.C.A. § 1731, and is exclusive, hence no crime is charged in the indictment; (4) that the uncontradicted evidence requires a finding that there was no substantial ground for bringing appellant Schmidt to trial on any charge specified in the indictment.

■ The District Court ruled correctly upon these questions. The removal proceedings here form the basis of the petitions for writs of habeas corpus, and the questions to be determined both in the removal proceedings and on the petitions for the writs are identical. Cf. Jeffries v. Lillard, Marshal, 6 Cir., 27 F.2d 230, 231.

■ Removal proceedings are preliminary. The order of removal does not adjudicate the merits of the case and amounts to no more than a finding that the accused may be brought to trial. United States ex rel. Kassin v. Mulligan, Marshal, 295 U.S. 396, 401, 55 S.Ct. 781, 783, 79 L.Ed. 1501; Jeffries v. Lillard, Marshal, supra. The in-

884

quiry is therefore limited to the question whether there is probable cause to believe the accused guilty so as to justify commitment and removal for trial. Fetters, Marshal, v. United States ex rel. Cunningham, 283 U.S. 638, 641, 51 S.Ct. 596, 75 L.Ed. 1321. Meritorious questions of guilt or innocence are to be determined at the trial and not in the removal proceedings. Cf. Meehan v. United States, 6 Cir., 11 F.2d 847.

■ Appellants' first contention raises a question of law as to the validity of the statute upon which the indictment is based. But questions as to the constitutionality of statutes are to be left to the trial court and the reviewing courts to determine. Fetters, Marshal, v. United Sates ex rel. Cunningham, supra; United States ex rel. Kassin v. Mulligan, Marshal, supra.

■ The second contention deals with the scope of a statute, and thus raises a disputed question of law. Neither the Commissioner nor the District Court has jurisdiction in this case to rule upon such matters. Fetters, Marshal, v. United States ex rel. Cunningham, supra; United States ex rel. Kassin v. Mulligan, Marshal, supra.

■ The third contention pertains to the sufficiency of the indictment. The Commissioner and the District Court were foreclosed by the holdings in Fetters, Marshal, v. United States ex rel. Cunningham, supra, and United States ex rel. Kassin v. Mulligan, Marshal, supra, from passing on this question.

■ We bear in mind that this court is called upon to examine the evidence and to decide whether it requires a finding that there was no substantial ground for bringing the accused to trial. United States ex rel. Kassin v. Mulligan, Marshal, supra. The evidence adduced at the hearing was in substance as follows: The Government introduced a copy of the indictment and two witnesses who identified the appellants. Each appellant took the stand in his own behalf, and offered witnesses who testified that the statements, contracts, notes and papers in question passed through the offices both of the credit agency of which Tucker was manager, and of the Automobile Sales Company, being forwarded by the latter company to the Bancredit Corporation. These witnesses were employees of the appellants, who categorically denied entering into any conspiracy, having any dishonest purpose, or making any false statement. Witnesses were offered as to the good reputation of appellants for honesty and veracity. It was shown that neither of the appellants has ever been convicted of crime. Schmidt testified that he had used Tucker's credit company during the time of the alleged conspiracy. Immediately prior to that time he had used Dun & Bradstreet for credit references. Tucker, having been the local manager of Dun and Bradstreet, later associated himself with General American Credits, Inc., from which agency in July, 1935, Schmidt began to secure credit statements for these transactions. The overt acts were alleged to have been committed in August and September, 1935. Tucker did not claim that the credit statements were true, but said that they were made in every instance by persons other than himself. Both Schmidt and Tucker denied having any personal knowledge of the falsity of the credit reports when made. Schmidt's employees testified that there was no indication in these transactions that the sales made by the Automobile Trading Company in Helena, Arkansas, were to irresponsible persons. Schmidt also said that he had known Jackson for fifteen years. Jackson operated the Automobile Trading Company, charged to have made the false statements in the conditional sales contracts and the notes and the false statements as to income. Schmidt financed Jackson in this business. None of the salesmen who installed the refrigerators were called as witnesses. Schmidt testified that he sold at wholesale the same refrigerators the retail sales of which by Jackson form the basis of the indictment.

■ This record fails by far to measure up to the standard required for reversal here, namely, that the petitioners' evidence so overwhelmingly establish their innocence as completely to destroy the presumption of probable cause emanating from the indictment. Price v. Henkel, Marshal, 216 U.S. 488, 494, 30 S.Ct. 257, 54 L.Ed. 581. Cf. United States ex rel. Kassin v. Mulligan, Marshal, supra.

The judgment is affirmed.

MOORMAN, Circuit Judge, concurred in the conference decision, but this opinion was not prepared until after his death.