**UNITED STATES ex rel. SEMEL v. FITCH, U. S. Marshal.**

Civil Action No. 1680.

District Court, D. Connecticut.

March 23, 1946.

Adrian W. Maher, U. S. Dist. Atty., of Bridgeport, Conn., and Valentine J. Sacco, Asst. U. S. Atty., of Hartford, Conn., for petitioner.

Samuel Rosenthal, of Hartford, Conn., and Benjamin Slade and Slade & Slade, all of New Haven, Conn., for respondent.

SMITH, District Judge.

This is a habeas corpus petition brought to test the legality of the detention of the petitioner under a warrant of removal, ordering the removal of the petitioner to the Western District of Louisiana for trial under an indictment returned in the Monroe Division of that District.

The petitioner surrendered to the Marshal on the warrant, and, upon service of this Writ of Habeas Corpus, was released on bail pending hearing and decision by the court in this habeas corpus proceeding.

■ The same principles govern the decision of the court on habeas corpus as applied in the contested proceeding for issue of the warrant of removal. The decision of the court on that question, however, although persuasive, is not binding on the same or another court on habeas corpus.

The petitioner attacks both the validity of the fourth count of the indictment and the sufficiency of the evidence before the Commissioner as a basis for a finding of probable cause for removal. The Government relies solely upon the fourth count for removal.

■ The petitioner contends that the general conspiracy statute (Section 37 of the Criminal Code, Title 18 U.S.C.A. § 88), upon which the fourth count is based, has been superseded by the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., making it a crime to agree to do specific things in violation of the Act or regulations thereunder. The question does not appear to have been passed upon directly by the courts although the Old Monastery case would appear to uphold the contention that the Emergency Price Control Act leaves open the possibility of prosecution for conspiracy to violate that Act under the general conspiracy statute (Section 37 of the Criminal Code, Title 18 U.S.C.A. § 88). Old Monastery Co. v. United States, 4 Cir., 1945, 147 F.2d 905. The Congress apparently recognizes that such prosecution will lie under the general conspiracy statute by its provision in the 1945 amendments to the Emergency Price Control Act of an opportunity for stay of such conspiracy prosecution pending attack on the validity of regulations under the Emergency Price Control Act in the Emergency Court of Appeals. See Conference Report accompanying Senate Joint Resolution 30, 79th Congress, 1st Session, pp. 7 and 8.

The petitioner also contends that the conspiracy, as charged, is no more than the substantive offenses of offering and agreeing to sell, and of selling, whiskey above ceiling prices, and that each of the substantive offenses requires a seller and a buyer, and that since the alleged conspirators are charged to have been the sellers, and John the buyer, of the whiskey, they may not be prosecuted separately for a conspiracy to violate the substantive provisions of the Emergency Price Control Act and the regulations regarding ceiling prices, under the doctrine of United States v. Zeuli, 2 Cir., 1943, 137 F.2d 845 Since an agreement of the parties is an essential element in a sale, indictment of one buyer and one seller for a conspiracy to make the sale, is of doubtful validity. United States v. Katz et al., 1926, 271 U.S. 354 at p. 355, 46 S.Ct. 513, 70 L.Ed. 986.

The question here, therefore, is whether the indictment sets up a state of facts showing an illegal combination to consummate the violation of the substantive provisions of the Act and regulations by an agreement broader in scope than the substantive offenses. On the face of the indictment, the first paragraph of the fourth count broadly charges a conspiracy between the five alleged conspirators and others unknown to commit the substantive offenses. That charge would be of doubtful validity if it did not contemplate something more than the substantive offenses themselves. The second paragraph of the fourth count sets forth that the manner in which the conspiracy was to be, and was, carried into effect was by means of the substantive offenses, with nothing more. Up to this point, therefore, the count is of doubtful validity under the Katz and Zeuli cases. It is charged, however, in the following paragraphs of the fourth count, that the unlawful conspiracy was carried out, not only by the overt acts charged which were identical with the substantive offenses, but also by means of an additional forty-four overt acts. Some of these forty-four overt acts are necessarily included in the substantive offenses. Some of them, however, may be interpreted as preparation for the substantive offenses and, if they are so construed, they may be considered so to explain the first paragraph of the fourth count as to indicate a conspiracy broader in scope than the substantive offenses themselves. They include, in overt act number 39, the allegation that the defendant Semel, by and through the United Distillers Products Corporation, sold to the Distillers Factors Corporation three hundred and fifty-six cases of whiskey at $37.97 per case, an amount which appears, from the evidence and statements of counsel, to have been not in excess of the applicable ceiling prices. The scheme, therefore, contemplated more than the sale by the alleged conspirators, as the Distillers Factors Cor-

poration, to John, including also the providing to the alleged conspirators by the defendant Semel of the goods to be the subject of the illegal transactions. Of course, unless this first sale was a part of the conspiracy known and intended by the parties to the illegal agreement to be for the purpose of carrying out the substantive violations, it is of no aid to the validity of the indictment or any convictions under it.

We have, therefore, two questions: (1) Whether the allegations of the overt acts may be looked to to amplify the charges of conspiracy in the fourth count, and (2) whether the interpretation of the indictment is for this court or for the trial court.

It would appear that the indictment may be defective in that, in the charging clauses of the fourth count, there is no language which indicates that the illegal agreement relied upon as the basis for the conspiracy charge is any broader than the offer to sell, agreement to sell, or agreement of sale.

█ The overt acts may not ordinarily be considered in aid of the averments of conspiracy in the charging clauses of an indictment—United States v. Britton, 1883, 108 U.S. 199, 205, 12 S.Ct. 531, 27 L.Ed. 698; Joplin Mercantile Co. v. United States, 1915, 236 U.S. 531, 535, 35 S.Ct. 291, 59 L.Ed. 705—although they are sometimes resorted to in order to interpret doubtful terminology in the charging clauses. United States v. Carter & Co., Inc., et al., D.C.W.D.Ky.1944, 56 F.Supp. 311; Wishart v. United States, 8 Cir., 1928, 29 F.2d 103.

█ There is a serious question whether, under the Britton and Joplin cases, and under the rule re conspiracies identical with substantive crime, this indictment, in its fourth count, charges any crime whatever. Yet, the theory of the Carter and Wishart cases would sustain the fourth count by reference to the overt acts as charging a conspiracy broader than the substantive crimes, and under the rule of Fetters, U. S. Marshal v. United States ex rel. Cunningham, 1931, 283 U.S. 638, 51 S. Ct. 596, 75 LEd. 1321, doubtful questions of law relating to the sufficiency of the indictment as well as all doubtful questions of fact, are matters to be left for the trial court to determine.

On the facts, counsel vigorously attack the finding of probable cause, claiming that the two statements attributed to Semel, the petitioner, by the witness John are susceptible, in the light of the surrounding facts, only of an innocent interpretation and that there is, therefore, no proof whatever, outside the indictment, to rebut the petitioner's testimony that he had no knowledge of, or part in, the alleged conspiracy.

The petitioner admittedly provided the whiskey which is the basis of the alleged conspiracy in this case. He knew, and talked, and dealt with, Needleman, one of the other alleged conspirators. His own evidence is to the effect that his dealings with Needleman involved only legal transactions in the whiskey furnished by him and which was obtained by him from Needleman, legally, for bottling. It is also the contention of the petitioner that the whiskey could be traced to him at any time by reason of the records, bottle markings, and other requirements of the Alcohol Tax Unit and other Government agencies. He, therefore, contends that, even if he did make any remark to John after the petitioner's conversation with Needleman that he would back up or stand behind any agreement by Needleman, there is nothing to show that the petitioner intended to stand behind any illegal agreements or had any knowledge that any such agreement was meant, and that the alleged statements by the petitioner that the bill of lading should be made out to the Distillers Factors because it was made out to petitioner in the letter of credit and he wanted it changed, that he didn't want any tracing, and that he didn't want it traced, could not be interpreted to show any effort to conceal the transaction and thereby create an inference of guilty knowledge since the subordinate facts show that no such concealment was possible.

The petitioner argues that, of two possible inferences from evidence, that which points to innocence rather than that which points to guilt, must be taken by the Court.

210

The Government contends that in any removal proceeding, if there are two possible inferences from the evidence, one of which upholds the Commissioner's finding of probable cause, the finding must be sustained. This appears to be a fair statement of the rule, if qualified to exclude arbitrary or capricious appraisal of the evidence. If, upon the evidence, there is any substantial ground for bringing the petitioner to trial on the charge specified in the indictment, the attack upon the finding must fail, and in determining whether a substantial ground exists, the evidence is to be construed quite favorably to the validity of a finding of probable cause since an order of removal adjudges nothing affecting the merits of a case and amounts to no more than a finding that the accused may be brought to trial. United States ex rel. Kassin v. Mull'gan, U. S. Marshal, et al., 1935, 295 U.S. 396, 55 S.Ct. 781, 79 L. Ed. 1501.

On a trial, where of two possible inferences to be drawn from the evidence that more favorable to the defendant must be taken, the evidence presented before the Commissioner might well lead to acquittal. However, the court cannot say that it was not legally possible to draw an inference that a change in the parties designated on the bill of lading was for the purpose of preventing the tracing, not of the whiskey back to the petitioner as its source, but the tracing direct from the final purchaser to the petitioner, indicating guilty knowledge as a reason for the petitioner's desire not to be directly connected with the final sale. Such an inference may be erroneous, but the court cannot say that it is arbitrary or capricious.

On the presentation made before the Commissioner, the court has at least a reasonable doubt as to this defendant's connection with the alleged conspiracy, as well as a serious question of the validity of the indictment. Those, however, are both questions reasonably open to a difference of opinion and would not justify the court in depriving the trial court of opportunity of passing on them by holding the Commissioner's finding or the warrant of removal illegal.

It is significant here that, in balancing the hardship of removal to a distant district for trial on scant evidence against the delays to prompt disposition of criminal charges, provided by requiring proof in addition to the indictment for removal, the Supreme Court of the United States has found it desirable to eliminate the requirement of any proof of probable cause in cases such as this where a grand jury has returned an indictment. The new Federal Rules of Criminal Procedure, effective the 21st of this month, so provide, in Rule 40 (b) (3).

The writ of habeas corpus is ordered discharged and petitioner ordered released on bail conditioned on his appearance forthwith before the United States District Court for the Western District of Louisiana, Monroe Division.

Form of judgment may be submitted by counsel.